FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

2015 SEP 24  P 1: 34

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | | |
|---|---|---|
| PETER BREWITT, AMY M. THOMAS, RONALD SEKUL, and TOM ASSAF ABDALLA, individually and on behalf of all others similarly situated, | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. *1:15 CV 1223- LO/MSN* |
| VOLKSWAGEN AG, VOLKSWAGEN GROUP OF AMERICA, AUDI AG, and AUDI USA, | § § § § § | |
| Defendants. | § | JURY TRIAL DEMANDED |

## ORIGINAL CLASS ACTION COMPLAINT

Plaintiffs Peter Brewitt, Amy M. Thomas, Ronald Sekul, and Tom Assaf Abdalla ("Plaintiffs") bring this action individually and on behalf of all similarly situated persons ("Class Members"), allege the following against Volkswagen AG and Volkswagen Group of America (collectively, "Volkswagen") and Audi AG and Audi USA (collectively, "Audi"), based on their personal knowledge where applicable, information and belief, and the investigation of counsel.

## I.    NEED FOR ACTION

1.    Volkswagen and Audi are leading promoters of the so called "diesel revolution" in consumer vehicles. Volkswagen and Audi engaged in a massive and widespread marketing campaign touting the fuel efficiency and environmental benefits of their TDI "clean diesel" engine. Volkswagen and Audi incorporated the TDI "clean diesel" engine in numerous vehicles for the model years 2009–2015. Consumers saw the TDI "clean diesel" as an opportunity to

address their "concerns about fuel consumption and greenhouse gas emissions without compromis[ing]" power and performance.[1]

2.      Volkswagen and Audi spent millions of dollars convincing consumers that their TDI "clean diesel" engines not only met emission standards, but were substantially lower and better for the environment than other vehicles.

3.      Volkswagen and Audi's claims about emissions and benefits to the environment were built on an outright lie.

4.      Volkswagen and Audi installed software in nearly half a million vehicles that enabled the vehicles to cheat and circumvent federal and state emissions tests. The software, or "defeat device" as it has been referred to, let the TDI "clean diesel" engines detect when they were being tested for emissions by state and federal authorities.  When this defeat device sensed that authorities were testing the vehicle for emissions of regulated pollution-causing substances, it curtailed the vehicles' emissions, resulting in test results showing far less emissions than they would under normal driving circumstances.

5.      Volkswagen's and Audi's implementation of the defeat devices made it appear that the cars were fuel efficient when in reality they did not comply with emissions standards. When the cars operate under regular driving conditions, the defeat device does not engage and the vehicles emit *10 to 40 times* the allowable legal levels of certain pollutants.

6.      Volkswagen's and Audi's unlawful, unfair, and fraudulent business practices; false advertising; and knowing misrepresentations injured hundreds of thousands of American consumers. These consumers purchased and paid a premium for these vehicles based on Volkswagen's and Audi's false representations that the vehicles not only met the relevant

---

[1] http://www.hybridcars.com/vw-group-us-sells-over-100000-tdi-clean-diesels-in-2013

emissions criteria, but that such emissions were much lower than the vast majority of the vehicles on the road.

7.      Plaintiffs and the Class Members overpaid for the vehicles and did not receive the benefit of their bargain, and their vehicles have suffered a diminution in value.

## II.     JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant; there are more than 100 class members; and the aggregate amount in controversy exceeds $5,000,000; and minimal diversity exists.

9.      This Court has personal jurisdiction over Volkswagen and Audi because they conduct business in Virginia and have sufficient minimum contacts with Virginia based on sales of thousands of vehicles in the state. Volkswagen's principal place of business is Herndon, Virginia.

10.     Venue is proper in this District under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from this District, and Defendants have caused harm to class members residing in this District.

## III.    PARTIES

11.     Plaintiff Peter Brewitt is a resident and citizen of South Carolina. He is an environmental studies professor at Wofford College in Spartanburg, South Carolina. He purchased a 2015 Golf TDI from a Volkswagen dealership in South Carolina in 2014. Leading up to the purchase of the Golf TDI, he conducted extensive research on the Golf TDI. His research included searching Volkswagen's website and studying its representations about the TDI "clean diesel" engine's environmental and performance benefits. Mr. Brewitt test drove the

Golf TDI and noted its performance. He noted the mileage claims that Volkswagen posted on the car. As an environmental studies professor and someone who was deeply concerned about the environment, Mr. Brewitt's decision to purchase the Golf TDI was based heavily on the fact that Volkswagen represented that the car was a "clean diesel." He recalls that low emissions, benefits to the environment, fuel efficiency, and performance were consistent themes across the materials that he reviewed. Those representations about low emissions, benefits to the environment, fuel efficiency, and performance influenced his decision to purchase his Golf TDI. Had Volkswagen disclosed that his Golf TDI contained a defeat device to circumvent emissions tests, he would not have purchased the vehicle, or would have paid less for it. Mr. Brewitt is upset that the car pollutes more than Volkswagen represented. He believes that a recall and any changes or modifications to the car will result in decreased performance, decreased fuel mileage, and a diminution in the resale value of the vehicle.

12.     Plaintiff Amy N. Thomas is a resident and citizen of Louisiana. She purchased a 2014 Volkswagen Passat TDI on December 7, 2013. Leading up to the purchase, Ms. Thomas researched the benefits and attributes of the TDI "clean diesel" engine. Her research included viewing Volkswagen advertisements and visits to its website, among other things. She recalls that low emissions, benefits to the environment, and fuel efficiency were consistent themes across the materials that she reviewed. Those representations about low emissions, benefits to the environment, and fuel efficiency influenced her decision to purchase her Passat TDI. Had the materials she reviewed disclosed that her car contained a defeat device that circumvented emissions tests or noted that her car could would emit pollutants at 10 to 40 times the allowable level under normal driving conditions, she would not have purchased her Passat, or would have paid less than she did.

13.     Plaintiff Ronald V. Sekul is a resident and citizen of Louisiana.  He purchased a 2013 Volkswagen Passat 2.0L TDI "clean diesel" on March 13, 2013.  Leading up to the purchase, Mr. Sekul researched the benefits and characteristics of the TDI "clean diesel" engine. His research included viewing Volkswagen advertisements and visits to its website, among other things. He recalls that low emissions, benefits to the environment, and fuel efficiency were consistent themes across the materials that he reviewed. Those representations about low emissions, benefits to the environment, and fuel efficiency influenced his decision to purchase her Passat TDI. Had the materials he reviewed disclosed that his car contained a defeat device that circumvented emissions tests or noted that his car could would emit pollutants at 10 to 40 times the allowable level under normal driving conditions, he would not have purchased his Passat, or would have paid less than he did.

14.     Plaintiff Tom Assaf Abdalla is a resident and citizen of Mississippi.  He purchased a 2014 Volkswagen Passat with the TDI "clean diesel" engine on March 31, 2014. Leading up to the purchase, Mr. Abdalla researched the benefits and characteristics of the TDI "clean diesel" engine. His research included viewing Volkswagen advertisements and visits to its website, among other things.  He recalls that low emissions, benefits to the environment, and fuel efficiency were consistent themes across the materials that he reviewed. Those representations about low emissions, benefits to the environment, and fuel efficiency influenced his decision to purchase his Passat TDI. Had the materials he reviewed disclosed that his car contained a defeat device that circumvented emissions tests or noted that his car could would emit pollutants at 10 to 40 times the allowable level under normal driving conditions, he would not have purchased his Passat, or would have paid less than he did.

## IV.   FACTUAL BACKGROUND

15.   Before Volkswagen and Audi began selling vehicles with diesel engines in the 2000s, diesel powered consumer vehicles accounted for a small fraction of U.S. car sales despite the fuel efficiency advantages that diesel engines have over gasoline cars.

16.   The low market share of diesel cars was due in large part to concerns about emissions. It was difficult for manufacturers to design an engine that achieved the fuel efficiency benefits of diesel yet complied with emissions requirements.

### A.   Volkswagen's and Audi's Marketing Campaigns Promised that the TDI "clean diesel" engines met and exceeded emissions standards.

17.   Volkswagen marketed its diesel engines under the moniker "TDI," which stands for Turbocharged Direct Injection.   There have been three main generations of TDI engines sold in the United States. Volkswagen introduced the latest generation of TDI engines in 2008 and marketed them as "Clean Diesel." These engines were first available in the 2009 models of the Jetta sedan and sportswagen. Compared to previous generations of the TDI engines, the "clean diesel" engines introduced in 2008 saw a large increase in power and torque.

18.   Volkswagen and Audi sold hundreds of thousands of vehicles throughout the United States and worldwide for the model years 2009 through 2015 that incorporated the TDI "clean diesel" engines. Central to the attractiveness of these vehicles is that they obtain the fuel efficiency benefits of diesel without the emissions issues that plagued previous diesel engines.

19.   To promote the TDI "clean diesel" engines, Volkswagen and Audi engaged in a massive and long-term advertising campaign. The advertisements focused heavily on the low emissions of the TDI "clean diesel" engine and the corresponding benefits to the environment.

6

20.     The importance that Volkswagen and Audi placed on the low emissions and environmental benefits of its TDI "clean diesel" engines is illustrated by the 2010 "Green Police" commercial that Audi debuted during the 2010 Super Bowl.

21.     In this one-minute ad, Audi paid millions to promote the environmental benefits of the TDI "clean diesel" engine. In the advertisement, the Green Police arrest ordinary citizens for using plastic instead of paper, throwing away batteries, not composting orange rinds, using incandescent light bulbs, and setting their hot tub thermostats too high. All this happens while Robin Zander sings redone lyrics to Cheap Trick's classic "The Dream Police."

22.     The Green Police, however, give a thumbs up to Audi's diesel A3 TDI, which claims to get 42 miles per gallon on the highway and reduce greenhouse gas emissions by 30% using the TDI "clean diesel" engine.[2]

23.     Volkswagen's print and web advertisements similarly touted the environmental benefits of the TDI "clean diesel" engine. A Volkswagen press release said that cars incorporating the TDI "clean diesel" engine were "able to meet the toughest emissions standards" and therefore offer the "best of both worlds for people and the planet—greener fuel and greater economy."[3] The press release represented that an independent study concluded that "Volkswagen tied Toyota for the lowest smog-forming pollutant emissions" and that "the newer and cleaner diesel models that Volkswagen now offers will be technologies to watch":

---

[2] https://www.youtube.com/watch?v=Ml54UuAoLSo
[3] https://www.media.vw.com/documents/2010_vwgoa_csr_report.pdf at 28.

7

ENVIRONMENT. INNOVATION

**ECOPAL**

**GREEN CARS**

Already a worldwide leader in the field of low-consumption, low-emission powertrains, with our ever-improving technology we aim to offer carbon-neutral mobility.

**TDI Clean Diesel** With turbo-charged direct injection engine technologies, ultra-low sulfur clean diesel and the most advanced catalytic converter systems able to meet the toughest emission standards, Volkswagen Group's TDI Clean Diesel vehicles offer the best of both worlds for people and the planet — greener fuel and greater economy.

While other green solutions have to switch from battery power to gasoline at highway speeds, TDI Clean Diesel offers true fuel economy on and off the highway — up to 40 percent more.

More than any other affordable drive technologies today, economical TDI Clean Diesel is making a bigger contribution toward reducing oil consumption and greenhouse gases. Converting one-third of the cars on the road today to TDI Clean Diesel would save approximately 1.4 million barrels of oil a day.

**TFSI engine technology** (turbocharged fuel stratified injection engine technology) delivers turbocharged acceleration while still delivering responsible fuel efficiency — the optimum balance of power and economy.

**Audi Clean Air Intelligent vehicles** will let drivers choose the most energy-efficient route using smart engines, traffic-information nodes and on-board traffic cameras. Vibration-energy harvesting provides a clean energy source to power vehicle sensors.

**Hybrid advances:** Our all-new Touareg Hybrid, with its elegant design and dynamic engineering, is tangible proof that a consumer won't have to sacrifice when shopping for an environmentally responsible car. We soon will be launching the Audi Q5 Hybrid, and we are adding more hybrids like the Volkswagen Jetta Hybrid for 2012.

We are also bringing integrated powertrain and after treatment systems onto the market to drastically reduce nitrogen oxide, carbon monoxide, volatile hydrocarbon and particulate emissions.

**ENVIRONMENTAL PARTNERSHIPS**

- Business for Social Responsibility
- Chesapeake Bay Foundation
- Conservation International
- International Conservation Cause Foundation
- Planet Forward
- The Environmental Law Institute
- The Carbon Neutral Fund
- The Nature Conservancy
- World Environmental Council

**ENVIRONMENTAL PARTNERS AROUND THE WORLD**

- Bavarian State Forestry
- Center for Environmental Education and Communications (CEEC) of the Ministry of Environmental Protection (MEP)
- Forest Yield Science at the Technical University of Munich
- Green City Energy
- Nature and Biodiversity Conservation Union (NABU)
- Saxony State Foundation for Nature

**SPOTLIGHT ON SUCCESS**

In the 2010 comprehensive environmental rankings published by the Union of Concerned Scientists, an alliance of more than 250,000 citizens and scientists working for a healthy environment, Volkswagen tied Toyota for the lowest smog-forming pollutant emissions. According to the report, "The newer and cleaner diesel models that Volkswagen now offers will be technologies to watch—especially to see if they can beat out other companies' hybrids."



24.     A press release from Volkswagen's website titled "Environmental" promoted the environmental benefits of the TDI "clean diesel" engine and proclaimed that the engine reduced nitrous oxide emissions by 90% and CO2 emissions by 25%, resulting in "[t]he most efficient internal combustion engine."



25.     Volkswagen has pervasively promoted the TDI "clean diesel" engine's ability to achieve fuel efficiency and performance gains while having emissions lower than most vehicles. An ad brochure for the 2014 Volkswagen Jetta model with the TDI "clean diesel" engine represented that car had lower CO2 emissions than 90% of other vehicles.



26.     Volkswagen capitalized on the combination of environmental and performance benefits of the TDI "clean diesel" engine in a marketing campaign directed at persuading consumers to choose the Jetta over Toyota's Prius hybrid.

27.     In the commercial referred to as "Meet the Volkswagens – Jetta TDI Meets Prius," a Jetta with the TDI "clean diesel" engine is portrayed as having more power and being more exciting to drive than the Prius, yet still obtaining the environmental benefits associated with the hybrid.[4]

---

[4] https://www.youtube.com/watch?v=JXK63kvUi6U

28.    In addition to its advertising campaign, Volkswagen linked visitors to its website to www.clearlybetterdisel.org, which stated that modern diesel engines "meet[] the highest standards in all 50 states, thanks to ultra-low sulfur (ULSD) fuel and innovative engine technology that burns cleaner."

29.    Because of Volkswagen's and Audi's representations about the environmental benefits of the vehicle models utilizing the TDI "clean diesel" engine, vehicles with the engine garnered numerous awards.

30.    The 2009 Volkswagen Jetta TDI Clean Diesel was named 2009 "Green Car of the Year" by the "Green Car Journal." Volkswagen and Audi repeated the award when the Audi A3 TDI Clean Diesel was named the 2010 Green Car of the Year. TDI "clean diesel" powered vehicles were included in many other "green car" lists. JD Power and Associates recognized "Volkswagen Group of America . . . as 'the most environmentally friendly car company selling in the USA.'"[5]

31.    To bolster its promotion of the "diesel revolution," and sell its cars to the American consumers, Volkswagen and Audi touted these green car awards in press releases and advertisements.  Volkswagen stated that its TDI "clean diesel" vehicles "integrated strategy focused on reducing fuel consumption and emissions, building the world's cleanest diesel engines and developing totally new power systems, which utilize new fuel alternatives."[6]

32.    And this promotion worked—the TDI "clean diesel" engines comprise a significant amount of Volkswagen and Audi's United States sales. In 2013, 24 percent of Volkswagen sales in the United States were for vehicles containing TDI "clean diesel" engines.

---

[5] http://update.vw.com/environment/index.htm
[6] *Id.*

33.     According to Defendants themselves, the TDI "clean diesel" engine is influential in consumers' purchasing decisions.  Scott Keough, President of Audi of America said that "American consumers clearly recognize the benefits of clean diesel TDI vehicles."[7]  "They understand now more than ever that this is a technology delivering real answers to society's concerns about fuel consumption and *greenhouse gas emissions without compromises.*"[8]

34.     Volkswagen also charges a premium for its TDI "clean diesel" cars.  The TDI "clean diesel" equipped version of the 2015 Jetta in the base "S" model costs $2,860 more than the same model with a traditional gasoline engine.  A consumer buying a Jetta in the highest trim version pays $6,315 more for the TDI "clean diesel" version.  The following chart illustrates the pricing premium that Volkswagen charges for the TDI "clean diesel" engine.

| Model | Base | Mid-trim | Highest Trim |
|---|---|---|---|
| VW Jetta | $2,860 | $4,300 | $6,315 |
| VW Golf | $2,950 | $1,000 | $1,000 |
| VW Passat | $5,755 | $4,750 | $6,855 |
| Audi A3 | $2,805 | $3,095 | $2,925 |

**B.     Volkswagen and Audi installed software that caused its TDI "clean diesel" engines to circumvent emissions tests.**

35.     The United States' Environmental Protection Agency ("EPA") administers a certification program to ensure that every vehicle introduced in the United States meets applicable emissions standards.  For a vehicle to be introduced into United States commerce, the EPA must issue a Certificate of Conformity ("COC").

---

[7] http://www.hybridcars.com/vw-group-us-sells-over-100000-tdi-clean-diesels-in-2013/
[8] *Id.* (emphasis added)

36.     The COC application must include, among other things, a list of all auxiliary emission control devices ("AECDs") that are installed on the vehicle. Under federal regulations, an AECD is "any element of design which senses temperature, vehicle speed, engine RPM, transmission gear, manifold vacuum, or any other parameter for the purpose of activating, modulating, delaying, or deactivating the operation of any part of the emission control system." 40 C.F.R. § 86.1803–01.

37.     Like other vehicles, Volkswagen's and Audi's COCs must include "a justification for each AECD, the parameters they sense and control, a detailed justification of each AECD that results in a reduction in effectiveness of the emission control system, and [a] rationale for why it is not a defeat device." 40 C.F.R. § 86.1844–0l(d)(l l).

38.     Federal regulations define a "defeat device" as a device "that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use." 40 C.F.R. § 86.1803-01. Defeat devices are prohibited unless they meet certain conditions, none of which are relevant here.

39.     Volkswagen and Audi violated federal regulations by using defeat devices on over 482,000 vehicles to circumvent federal and state emissions requirements.

40.     The companies manufactured and installed software in the electronic control module of these vehicles that sensed when the vehicle was being tested for compliance with EPA emission standards.

41.     This sophisticated software algorithm detects when a car is undergoing official emissions testing and turns full emissions controls on only during the test. The manipulative software measures factors such as the position of the steering wheel, the vehicle's speed, and even barometric pressure to sense when the car was being subjected to testing.

42. However, when the car is driven during normal driving conditions, the emissions controls are greatly reduced. This results in cars that meet emissions standards in the laboratory or testing station, but during normal operation, emit nitrogen oxides at up to 40 times the allowed standard.

43. The manipulative software turns off the emissions controls under normal driving conditions so that the vehicles are both more powerful and obtain the greater fuel mileage and performance touted in advertising by Defendants.

44. Volkswagen and Audi use the defeat device to circumvent tougher emissions regulations that went into effect in 2008. Starting in 2008, most automakers supplied their diesel cares with tanks of a urea-based solution (often referred to as "AdBlue") that cuts down on nitrogen oxide emissions. Some Volkswagen and Audi models use AdBlue.

45. But the 2.0-liter four-cylinder TDI "clean diesel" engines at issue in this case were supposedly able to meet the stricter emissions requirements without a urea injection. That, however, turns out to be false. Volkswagen and Audi were only able to meet the stricter emissions requirements by circumventing the emissions tests through the use of the defeat device.

46. When the stricter emissions requirements went into effect in 2008, Volkswagen and Audi faced a choice. They could reengineer their engines to comply with the stricter emissions requirements, but in doing so risk a less powerful and less fuel efficient engine. Or they could cheat on the tests and reap the profits from customers that bought cars on the false assumption that they complied with emissions requirements. Volkswagen and Audi chose the latter and placed their profits above their consumers and the environment.

**C. Volkswagen and Audi are caught using the defeat device to circumvent emissions tests.**

14

47. In 2014, West Virginia University's Center for Alternative Fuels, Engines & Emissions published results of a study commissioned by the International Council on Clean Transportation that found significantly higher in-use emissions for Volkswagen's 2012 Jetta and 2013 Passat models. The International Council alerted the EPA and the California Air Resources Board ("CARB") about the emissions problems in May 2014.

48. When faced with the results of this study, Volkswagen did not admit that the study was correct and that the reason why the TDI "clean diesel" engines "met" emission requirements was because of the software algorithm that allowed them to circumvent the emissions tests.

49. Instead, Volkswagen continuously asserted to CARB and the EPA that the high emissions from these vehicles could be attributed to various technical issues and unexpected in-use conditions and it issued a voluntary recall in December 2014 to supposedly address the issue.

50. CARB, in coordination with the EPA, conducted follow up testing of these vehicles both in the laboratory and during normal road operation to confirm the efficacy of the recall. When the testing showed only a limited benefit to the recall, CARB broadened the testing to pinpoint the exact technical nature of the vehicles' emissions performance, and to investigate why the vehicles' onboard diagnostic system was not detecting the increased emissions.

51. None of the potential technical issues suggested by Volkswagen explained the higher test results consistently confirmed during CARB's testing.

52. Because of Volkswagen's and Audi's inability to explain the emission anomalies, the EPA would not issue COCs for the 2016 models. Only when it was clear that Volkswagen and Audi would be unable to import their 2016 models did they admit that the TDI "clean diesel" cars contained the defeat device software.

15

53. The EPA and CARB identified the vehicles in the chart below as containing the defeat device used to circumvent the emissions tests.

| Model Year | EPA Test Group | Make and Model(s) |
|---|---|---|
| 2009 | 9VWXV02.035N | VW Jetta, VW Jetta Sportwagen |
| 2009 | 9VWXV02.0U5N | VW Jetta, VW Jetta Sportwagen |
| 2010 | AVWXV02.0U5N | VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2011 | BVWXV02.0U5N | VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2012 | CVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2012 | CVWXV02.0U4S | VW Passat |
| 2013 | DVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2013 | DVWXV02.0U4S | VW Passat |
| 2014 | EVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2014 | EVWXV02.0U4S | VW Passat |
| 2015 | FVGAV02.0VAL | VW Beetle, VW Beetle Convertible, VW Golf, VW Golf Sportwagen, VW Jetta, VW Passat, Audi A3 |

This complaint refers to the vehicles in the list above as the "Class Vehicles."

54. Volkswagen and Audi sold roughly 482,000 vehicles with the defeat device.

**D. Volkswagen and Audi tacitly admit that they deceived customers.**

55. On Friday, September 18, 2015, the EPA sent Volkswagen and Audi a "Notice of Violation" based on their use of the defeat device to circumvent emissions tests.[9]

56. On Sunday September 20, 2015, Volkswagen CEO Martin Winterkorn admitted in a statement that "I personally am deeply sorry that we have broken the trust of our customers and the public."[10] Mr. Winterkorn did not contest the allegations in the Notice of Violation.

57. Following service of the Notice of Violation, Volkswagen ordered its dealerships in the United States to halt sales of new 2016 and remaining 2015 TDI "clean diesel" models with the engine containing the defeat device.

---

[9] The EPA's Notice of Violation is attached as Exhibit 1.
[10] http://www.nytimes.com/2015/09/21/business/international/volkswagen-chief-apologizes-for-breach-of-trust-after-recall.html

58.     Also following service of the Notice of Violation, Volkswagen and Audi began covering their digital footprints to eliminate advertisements touting the low emission properties of the TDI "clean diesel" engines. Volkswagen completely removed from its YouTube account the popular "Diesel Old Wives' Tales" series, which showcased the supposed environmental benefits and low emissions of the TDI "clean diesel" engine as compared to older diesel engines. A screenshot from Volkswagen's YouTube page shows the deletion of the videos.



59.     Volkswagen's "TV Commercials" playlist now not only features missing gaps where videos were deleted, but the company has set other videos to private.



## V.     VOLKSWAGEN'S AND AUDI'S CONDUCT INJURED PLAINTIFFS AND CLASS MEMBERS

60.     Irrespective of whether the vehicles containing the defeat device are recalled, the Plaintiffs and Class Members have been injured.  To bring the Class Vehicles into compliance with emissions standards, the vehicles performance and fuel efficiency will be diminished. Consumers will be left with a vehicle that is overall far worse than the one that they bargained for.

61.     Because of the diminished performance, the cars will suffer a diminution in value.

## VI.     TOLLING OF STATUTE OF LIMITATIONS/CLAIM ACCRUAL

62.     The Plaintiffs and Class Members had no realistic opportunity to know that the Class Vehicles contained the defeat device. In addition, despite their due diligence, Plaintiffs and the Class Members could not reasonably have expected to learn or discover that Volkswagen and Audi concealed material information concerning the Class Vehicles and the defeat devices.

63.     Volkswagen's and Audi's knowledge and active concealment of the defeat devices has tolled any applicable statute of limitation.  Volkswagen and Audi are estopped from relying on any statute of limitation because the companies concealed the presence of the defeat devices from both government regulators and the general public.

64.     Because the Plaintiffs and Class Members could not have reasonably known about the factual basis for their claims until (at the earliest) the EPA published the Notice of Violation, accrual of their claims did not begin until September 18, 2015.

## VII.     CLASS ACTION ALLEGATIONS

65.     Plaintiffs bring this lawsuit as a class action on behalf of themselves, and all others similarly situated as members of the proposed class, under Federal Rules of Civil Procedure 23(a), (b)(3), and/or (b)(2). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

66.   The Class is defined as:

All residents of the United States, Commonwealth of Puerto Rico, U.S. Virgin Islands, and Guam who currently own or lease, or previously owned or leased the following models ("Class Vehicles") with the TDI "clean diesel" engine:

| Model Year | Make and Model(s) |
|---|---|
| 2009 | Volkswagen Jetta, Volkswagen Jetta Sportwagen |
| 2010 | Volkswagen Jetta, Volkswagen Jetta Sportwagen, Audi A3 |
| 2011 | Volkswagen Golf, Volkswagen Jetta, Volkswagen Jetta Sportwagen, Audi A3 |
| 2012 | Volkswagen Beetle, Volkswagen Beetle Convertible, Volkswagen Golf, Volkswagen Jetta, Volkswagen, Jetta Sportwagen, Audi A3, Volkswagen Passat |
| 2013 | Volkswagen Beetle, Volkswagen Beetle Convertible, Volkswagen Golf, Volkswagen Jetta, Volkswagen, Jetta Sportwagen, Audi A3, Volkswagen Passat |
| 2014 | Volkswagen Beetle, Volkswagen Beetle Convertible, Volkswagen Golf, Volkswagen Jetta, Volkswagen, Jetta Sportwagen, Audi A3, Volkswagen Passat |
| 2015 | Volkswagen Beetle, Volkswagen Beetle Convertible, Volkswagen Golf, Volkswagen Golf Sportwagen, Volkswagen Jetta, Volkswagen Passat, Audi A3, |

67.    Excluded from the Class are the defendants, their employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case, and all persons within the third degree of relationship to any such persons.

68.    **Numerosity:** Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, Volkswagen and Audi sold roughly 482,000 vehicles with the defeat device. Joinder under those numbers is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in the defendants' possession, custody, or control, as well as from records kept by the Department of Motor Vehicles of various states.

69.     **Typicality:** The representative Plaintiffs' claims are typical of the claims of the Class Members in that the representative Plaintiffs, like all Class Members, purchased or leased a vehicle with the defeat device in a transaction that was part of a multibillion dollar massive and longstanding advertising campaign that involved representations as to emissions, fuel efficiency, environmental impact, and performance.  Volkswagen and Audi never disclosed that the vehicles used the defeat device to circumvent emissions tests.  As a result, each Plaintiff did not receive the benefit of their bargain and/or overpaid for their vehicles, made lease payments that were too high and/or sold or will sell their vehicles at a loss as a result of the defeat devices.  These factual bases are common to all Class Members.

70.     **Commonality:** There are numerous questions of law and fact common to Plaintiffs and the Class Members, and those issues predominate over any question affecting only individual Class Members.  The common legal and factual issues include the following:

A.  Whether the Class Vehicles contained the software algorithm or defeat device that turns off emissions controls when driving normally and turns them on when the car is undergoing an emissions test;

B.  Whether the defeat device allows the Class Vehicles to circumvent emissions tests;

C.  Whether Volkswagen and Audi knows about the defeat device and, if so, how long they have known about the defeat device;

D.  Whether the failure to disclose the existence of the defeat device constitutes the omission of a material fact;

E.  Whether Volkswagen and Audi had a duty to disclose the defeat device to Plaintiffs and Class Members;

F.  Whether Volkswagen and Audi breached the Class Vehicles' express warranties;

G.  Whether Volkswagen and Audi breached the implied warranty of merchantability;

H.  Whether Volkswagen and Audi violated express warranty statutes;

I.  Whether Volkswagen and Audi violated consumer protection statutes;

J.  Whether Plaintiffs and Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction;

K.  Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

71.  **Adequate Representation**: Plaintiffs will fairly and adequately protect the interests of the Class Members.  Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

**Certification under Federal Rule of Civil Procedure 23(b)(2) for Declaratory and Injunctive Relief.**

72.  Volkswagen and Audi have acted or refused to act on grounds generally applicable to Plaintiffs and Class Members, making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

**Certification under Federal Rule of Civil Procedure 23(b)(3): Superiority and Predominance.**

73.  Plaintiffs and the Class Members have all suffered and will continue to suffer harm and damages as a result of Volkswagen's and Audi's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender.  Class

treatment will also permit the adjudication of claims by many members of the proposed class who could not individually afford to litigate a claim such as is asserted in this complaint. This class action likely presents no difficulties in management that would preclude maintenance as a class action.

## VIII.  CAUSES OF ACTION

## LOUISIANA

**Count 1 – Breach of Contract under Louisiana Law (La. Civ. Code Art. 190)**

74.    Plaintiffs re-allege and incorporate by reference all the above allegations as if fully set forth herein.  Plaintiffs bring this claim on behalf of the Class Members.

75.    Volkswagen's and Audi's failure to disclose the existence of the defeat devices and its effect on the vehicles' emissions and performance caused Plaintiffs and the Class Members to purchase or lease the Class Vehicles. Absent those misrepresentations and omissions, Plaintiffs and the Class Members would not have purchased or leased these vehicles, would not have purchased or leased these Class Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the TDI "clean diesel" engine. Accordingly, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain.

76.    Each and every sale or lease of a Class Vehicle constitutes a contract between Volkswagen or Audi and the purchaser or lessee. Volkswagen and Audi breached these contracts by selling or leasing Plaintiffs and Class Members defective vehicles and by misrepresenting or failing to disclose the existence of the "defeat device."

77.    As a direct and proximate result of Volkswagen's breach of contract, Plaintiffs and Class Members have been damaged in an amount to be proven at trial, which shall include,

but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**Count 2 – Louisiana Unfair Trade Practices and Consumer Protection Law (La. Rev. Stat. Ann. §§ 51:1401–1420)**

78.     Plaintiffs re-allege and incorporate by reference all the above allegations as if fully set forth herein. Plaintiffs bring this claim on behalf of the Class Members.

79.     The Louisiana Unfair Trade Practices and Consumer Protection Law prohibits unfair or deceptive methods, acts or practices in the conduct of trade or commerce.

80.     Volkswagen and Audi are "persons" under the law.

81.     Volkswagen and Audi both participated in unfair or deceptive acts or practices that violated the Louisiana Unfair Trade Practices and Consumer Protection Law, as described above and below. Volkswagen and Audi each are directly liable for these violations of law.

82.     By failing to disclose and actively concealing the defeat devices and the vehicles' true emissions and performance, Volkswagen and Audi engaged in unfair or deceptive practices prohibited by the Act, including (1) representing that the Class Vehicles have characteristics, uses, benefits qualities which they do not have, (2) representing that Class Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Class Vehicles with the intent not to sell them as advertised, (4) representing that a transaction involving Class Vehicles confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

83.     As alleged above, Volkswagen and Audi made numerous material statements about the performance, emissions, and overall manufacture of the Class Vehicles that were either

false or misleading. Each of these statements contributed to the deceptive context of Volkswagen's and Audi's unlawful advertising and representations as a whole.

84.     Volkswagen and Audi knew that the Class Vehicles included the defeat device and that without the defeat device the vehicles would have failed emissions tests and failed to live up to the representations in the massive advertising campaign.

85.     Volkswagen and Audi owed the Plaintiffs and Class Members a duty to disclose the defective nature of the vehicles based on the defeat devices because they

    a. Possessed exclusive knowledge of the defeat devices;

    b. Intentional concealed the presence of the defeat devices; and

    c. Made incomplete representations about the defeat devices and Class Vehicles.

86.     Volkswagen's and Audi's unfair or deceptive trade practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles.

87.     As a result of its violations of the Act detailed above, Volkswagen and Audi caused actual damage to Plaintiffs and Class Members and, if not stopped, will continue to cause harm. Plaintiffs and Class Members currently own or lease, or within the class period have owned or leased, Class Vehicles that only comply with emissions standards because of the defeat device and inherently unsafe. And even if complying with emissions standards, the vehicles fail to live up to the Volkswagen's and Audi's representations. Volkswagen's and Audi's conduct with respect to the defeat devices has caused the value of Class Vehicles to decline.

88.     Plaintiffs risk irreparable injury as a result of Volkswagen's and Audi's acts and omissions in violation of the Act, and these violations present a continuing risk to Plaintiffs and Class Members as well as to the general public.

**Count 3 – Redhibition and Breach of Implied Warranty of Fitness for Ordinary Use. (La. Civ. Code Art. 2520, *et seq.*)**

89.     Plaintiffs allege and incorporate by reference all paragraphs as though fully set forth herein.

90.     At all relevant times during the marketing, selling, and distribution of the Class Vehicles to the Plaintiffs and Class Members, Volkswagen and Audi knew of the use for which the Class Vehicles were intended and impliedly warranted them to be fit for ordinary use.

91.     The Class Vehicles, when sold, were defective, unmerchantable, and unfit for ordinary use. The Class Vehicles contain the defeat device and do not comply with federal or state law.

92.     Volkswagen and Audi breached the implied warranties of merchantability and fitness for ordinary use when the Class Vehicles were sold to Plaintiffs because they do not comply with federal and state law under normal driving conditions.

93.     The damages in question arose from the reasonably anticipated use of the product in question—driving.

94.     Additionally, these vices and defects are redhibitory in that they render the Class Vehicles either absolutely useless or render their use inconvenient, imperfect, and unsafe such that Plaintiffs would not have purchased the Class Vehicles had they known of the vices or defects.

95.     These redhibitory defects were not apparent by a reasonably prudent buyer of vehicles nor were they known to the buyer at the time of the sale. These defects existed at the time of delivery because the manufacturers assembled their vehicles to include the manipulative software.

96.     Volkswagen and Audi intentionally misrepresented that the vehicles passed government standards to Plaintiffs.

97.     In the alternative, the defects are redhibitory in that, while not rendering the Class Vehicles totally useless, they diminish the Class Vehicles' use and/value to such an extent that it must be presumed that Plaintiffs may have bought it, but for a lesser price.

98.     As a direct and proximate cause of Volkswagen and Audi's breach of warranty against redhibitory defects and the implied warranties of merchantability and fitness for ordinary use, Plaintiffs and the Class Members have suffered injuries and damages.

## MISSISSIPPI

### Count 1 – Breach of Implied Warranty of Merchantability (Miss. Code Ann. §§ 75-2-314)

99.     Plaintiffs re-allege and incorporate by reference all the above allegations as if fully set forth herein.  Plaintiffs bring this claim on behalf of the Class Members.

100.    Volkswagen and Audi are and were at all relevant times a merchant with respect to Class Vehicles.

101.    A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

102.    These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective because under normal driving conditions they do not comply with applicable emissions standards.

103.    As a direct and proximate result of Volkswagen and Audi's breach of express and implied warranties, Plaintiffs and the Class Members have been damaged in an amount to be determined at trial.

### Count 2 – Revocation of Acceptance

26

104.    Plaintiffs re-allege and incorporate by reference all the above allegations as if fully set forth herein. Plaintiffs bring this claim on behalf of the Class Members.

105.    Plaintiffs and the Class Members had no knowledge of such defeat devices or the Class Vehicles' true emissions and true characteristics. Plaintiffs could not have discovered them when they purchased or leased their automobiles from Volkswagen and Audi. Those companies, however, were aware of the defects and nonconformities at the time of sale and thereafter.

106.    Acceptance was reasonably induced by the difficulty of discovery of the defects and nonconformities before acceptance.

107.    There has been no material change in the condition of the Class Vehicles that the defects and nonconformities did not cause.

108.    These defects and nonconformities substantially impaired the value of the Class Vehicles to Plaintiffs and the Class Members. This impairments stems from presence of the defeat devices and the inability of the Class Vehicles to meet emissions standards under normal driving conditions.

109.    Plaintiffs and the Class Members would suffer economic hardship if they returned their vehicles but did not receive the return of all payments made by them. Thus far, Volkswagen and Audi have refused to acknowledge any revocation of acceptance and return immediately any payments made. Plaintiffs and the Class Members have not re-accepted the Class Vehicles by retaining them, as they must continue using them due to the financial burden of securing alternative means of transport for an uncertain and substantial period of time.

110.    Finally, due to Volkswagen and Audi's breach of warranties as set forth herein, Plaintiffs and the Class Members assert as an additional and/or alternative remedy, as set forth in

Miss. Code Ann. § 75-2-602, for a revocation of acceptance of the goods, and for a return to Plaintiffs and to the Class Members of the purchase price of all vehicles currently owned and for such other incidental and consequential damages as allowed under Miss. Code Ann. § 75-2-602

111.    Consequently, Plaintiffs and the Class Members are entitled to revoke their acceptances, receive all payments made to Volkswagen and Audi, and to all incidental and consequential damages, including the costs associated with purchasing complying vehicles, and all other damages allowable under law, all in amounts to be proven at trial.

**Count 3 – Unjust Enrichment (Based On Mississippi Law)**

112.    Plaintiffs re-allege and incorporate by reference all the above allegations as if fully set forth herein. Plaintiffs bring this claim on behalf of the Class Members.

113.    Volkswagen and Audi had knowledge of the defeat devices and the inability of the Class Vehicles to meet emissions standards without the help of the defeat devices, which they failed to disclose to Plaintiffs and the Class Members.

114.    As a result of their wrongful and fraudulent acts and omissions, as set forth above, pertaining to the defeat device and its concealment, Volkswagen and Audi charged a higher price for the Class Vehicles than the vehicles' true value, and Volkswagen and Audi obtained monies which rightfully belong to Plaintiffs and Class Members.

115.    Volkswagen and Audi appreciated, accepted and retained the non-gratuitous benefits conferred by Plaintiffs and Class Members, who without knowledge of the defeat device and the Class Vehicles' inability to comply with emissions standards under normal driving conditions paid a higher price for Class Vehicles than their actual worth. It would be inequitable and unjust for Volkswagen and Audi to retain these wrongfully obtained profits.

116.    Plaintiffs and Class Members are entitled to restitution and seek an order establishing Volkswagen and Audi as constructive trustees of the profits unjustly obtained, plus interest.

## SOUTH CAROLINA

### Count 1 – Breach of the Implied Warranty of Merchantability

117.    Plaintiffs re-allege and incorporate by reference all the above allegations as if fully set forth herein. Plaintiffs bring this claim on behalf of the Class Members.

118.    Volkswagen and Audi are and were at all relevant times merchants with respect to Class Vehicles under S.C. Code § 36-2-314.

119.    A warranty that the Class Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to S.C. Code § 36-2-314.

120.    These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Under normal driving conditions, the Class Vehicles emit 10 to 40 times the legal limit of pollutants.

121.    As a direct and proximate result of Volkswagen's and Audi's breach of the warranties of merchantability, Plaintiffs and the Class Members have been damaged in an amount to be proven at trial.

### Count 2 – Unjust Enrichment

122.    Plaintiffs re-allege and incorporate by reference all the above allegations as if fully set forth herein. Plaintiffs bring this claim on behalf of the Class Members.

123.    As a result of their wrongful and fraudulent acts and omissions, as set forth above, including the installation and concealment of the defeat device, Volkswagen and Audi charged a higher price for the Class Vehicles than the vehicles' true value, and Volkswagen and Audi obtained monies which rightfully belong to Plaintiffs and Class Members.

124.    Volkswagen and Audi knowingly enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and the Class Members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Defendants to retain these wrongfully obtained profits.

125.    Plaintiffs, therefore, are entitled to restitution and seek an order establishing Volkswagen and Audi as constructive trustees of the profits unjustly obtained, plus interest.

**Count 3 – Violations of the South Carolina Unfair Trade Practices Act (S.C. Code Ann. § 39-5-10, *et. seq.*)**

126.    Plaintiffs re-allege and incorporate by reference all the above allegations as if fully set forth herein. Plaintiffs bring this claim on behalf of the Class Members.

127.    Volkswagen and Audi are "persons" under S.C. CODE ANN. § 39-5-10.

128.    Volkswagen and Audi both participated in unfair or deceptive acts or practices that violated the South Carolina Unfair Trade Practices Act (the "Act"), S.C. CODE ANN. § 39-5-10, *et seq.*, as described above and below. Volkswagen and Audi each are directly liable for these violations of law.

129.    By failing to disclose and actively concealing the defeat devices and the vehicles' true emissions and performance, Volkswagen and Audi engaged in unfair or deceptive practices prohibited by the Act, including (1) representing that the Class Vehicles have characteristics, uses, benefits qualities which they do not have, (2) representing that Class Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Class Vehicles with the intent not to sell them as advertised, (4) representing that a transaction involving Class Vehicles confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

130.   As alleged above, Volkswagen and Audi made numerous material statements about the performance, emissions, and overall manufacture of the Class Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of Volkswagen's and Audi's unlawful advertising and representations as a whole.

131.   Volkswagen and Audi knew that the Class Vehicles included the defeat device and that without the defeat device the vehicles would have failed emissions tests and failed to live up to the representations in the massive advertising campaign.

132.   Volkswagen and Audi owed the Plaintiffs and Class Members a duty to disclose the defective nature of the vehicles based on the defeat devices because they

    a.   Possessed exclusive knowledge of the defeat devices;

    b.   Intentional concealed the presence of the defeat devices;

    c.   Made incomplete representations about the defeat devices and Class Vehicles.

133.   Volkswagen's and Audi's unfair or deceptive trade practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles.

134.   As a result of its violations of the Act detailed above, Volkswagen and Audi caused actual damage to Plaintiffs and Class Members and, if not stopped, will continue to cause harm. Plaintiffs and Class Members currently own or lease, or within the class period have owned or leased, Class Vehicles that only comply with emissions standards because of the defeat device and inherently unsafe. And even if complying with emissions standards, the vehicles fail to live up to the Volkswagen's and Audi's representations.  Volkswagen's and Audi's conduct with respect to the defeat devices has caused the value of Class Vehicles to decline.

135. Plaintiffs risk irreparable injury as a result of Volkswagen's and Audi's acts and omissions in violation of the Act, and these violations present a continuing risk to Plaintiffs and Class Members as well as to the general public.

136. Pursuant to S.C. CODE ANN. § 39-5-140, Plaintiffs and Class Members seek monetary relief against Volkswagen and Audi to recover for their sustained losses.

137. Plaintiffs further allege that Volkswagen's and Audi's malicious and deliberate conduct warrants an assessment of punitive damages because the companies each carried out despicable conduct with willful and conscious disregard of the rights of the consumers and the public, subjecting Plaintiffs and Class Members to cruel and unjust hardship as a result. Volkswagen and Audi intentionally and willfully misrepresented the health and environmental impact of the Class Vehicles. Volkswagen's and Audi's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

138. Plaintiffs further seek an order enjoining Volkswagen's and Audi's unfair or deceptive acts or practices, restitution, punitive damages, costs of Court, attorney's fees, and any other just and proper relief available under the Act.

**Count 4 – Violations of the South Carolina Regulation of Manufacturers, Distributors and Dealers Act. (S.C. CODE ANN. § 56-15-10)**

139. Plaintiffs re-allege and incorporate by reference all the above allegations as if fully set forth herein. Plaintiffs bring this claim on behalf of the Class Members.

140. Volkswagen and Audi are "manufacturers" as set forth in S.C. CODE ANN. § 56-15-10, as they are engaged in the business of manufacturing or assembling new and unused motor vehicles.

141. Volkswagen and Audi both participated in unfair or deceptive acts or practices that violated the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act

32

("Dealers Act"), S.C. CODE ANN. § 56-15-30. Volkswagen and Audi each are directly liable for these violations of law.

142.  Volkswagen and Audi have engaged in actions which were arbitrary, in bad faith, unconscionable, and which caused damage to Plaintiffs, the Class Members, and to the public. Volkswagen and Audi have directly participated in the wrongful conduct.

143.  Volkswagen's and Audi's bad faith and unconscionable actions include, but are not limited to: (1) representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Class Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Class Vehicles with the intent not to sell them as advertised, (4) representing that a transaction involving Class Vehicles confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

144.  Volkswagen and Audi have resorted to and used false and misleading advertisement in connection with their business. As alleged above, Volkswagen and Audi made numerous material statements about the safety and reliability of Class Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of Volkswagen's and Audi's unlawful advertising and representations as a whole.

145.  Pursuant to S.C. CODE ANN. § 56-15-110(2), Plaintiffs bring this action on behalf of themselves and the Class Members, as the action is one of common or general interest to many persons and the parties are too numerous to bring them all before the court.

146.  Plaintiffs and the Class Members are entitled to double the actual damages, the cost of the suit, attorney's fees pursuant to S.C. CODE ANN. § 56-15-110, and Plaintiffs also seek

injunctive relief under S.C. CODE ANN. § 56-15-110. Plaintiffs also seek treble damages because Volkswagen and Audi have acted maliciously.

**Count 5 – Breach of Contract/Common Law Warranty under South Carolina law**

147.    Plaintiffs re-allege and incorporate by reference all the above allegations as if fully set forth herein. Plaintiffs bring this claim on behalf of the Class Members.

148.    Volkswagen's and Audi's failure to disclose the existence of the defeat devices and its effect on the vehicles' emissions and performance caused Plaintiffs and the Class Members to purchase or lease the Class Vehicles. Absent those misrepresentations and omissions, Plaintiffs and the Class Members would not have purchased or leased these vehicles, would not have purchased or leased the Class Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the TDI "clean diesel" engine. Accordingly, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain.

149.    Each and every sale or lease of a Class Vehicle constitutes a contract between Volkswagen or Audi and the purchaser or lessee. Volkswagen and Audi breached these contracts by selling or leasing Plaintiffs and Class Members defective vehicles and by misrepresenting or failing to disclose the existence of the "defeat device."

150.    As a direct and proximate result of Volkswagen's breach of contract, Plaintiffs and Class Members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## VIRGINIA

### Count 1 – Breach of Contract

151.   Plaintiffs re-allege and incorporate by reference all the above allegations as if fully set forth herein.  Plaintiffs bring this claim on behalf of the Class Members.

152.   Volkswagen's and Audi's failure to disclose the existence of the defeat devices and their effect on the vehicles' emissions and performance caused Plaintiffs and the Class Members to purchase or lease the Class Vehicles. Absent those misrepresentations and omissions, Plaintiffs and the Class Members would not have purchased or leased these vehicles, would not have purchased or leased the Class Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the TDI "clean diesel" engine. Accordingly, Plaintiffs and the other Class members overpaid for the Class Vehicles and did not receive the benefit of their bargain.

153.   Each and every sale or lease of a Class Vehicle constitutes a contract between Volkswagen or Audi and the purchaser or lessee. Volkswagen and Audi breached these contracts by selling or leasing Plaintiffs and Class Members defective vehicles and by misrepresenting or failing to disclose the existence of the "defeat device."

154.   As a direct and proximate result of Volkswagen's breach of contract, Plaintiffs and Class Members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

155.   Plaintiffs plead this count under the laws of Virginia and Michigan. Volkswagen's headquarters are in Herndon, Virginia.  Audi USA's headquarters are in Michigan. As necessary, and in the alternative, Plaintiffs may allege sub-classes, based on the

35

residences at pertinent times of the Class Members to allege fraudulent concealment under the laws of states other than Virginia and Michigan.

**Count 2 – Violations of the Virginia Consumer Protection Act (VA. CODE ANN. §§ 59.1-196 through 59.1-207)**

156.    Plaintiffs re-allege and incorporate by reference all the above allegations as if fully set forth herein. Plaintiffs bring this claim on behalf of the Class Members.

157.    Volkswagen and Audi are "suppliers" under VA. CODE ANN. § 59.1-198.

158.    Volkswagen and Audi both participated in unfair or deceptive acts or practices that violated the Virginia Consumer Protection Act (the "Act"), VA. CODE ANN. § 59.1-198. Volkswagen and Audi each are directly liable for these violations of law.

159.    By failing to disclose and actively concealing the defeat devices and the vehicles' true emissions and performance, Volkswagen and Audi engaged in unfair or deceptive practices prohibited by the Act, including (1) representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Class Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Class Vehicles with the intent not to sell them as advertised, (4) representing that a transaction involving Class Vehicles confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

160.    As alleged above, Volkswagen and Audi made numerous material statements about the performance, emissions, and overall manufacture of the Class Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of Volkswagen's and Audi's unlawful advertising and representations as a whole.

161. Volkswagen and Audi knew that the Class Vehicles included the defeat device and that without the defeat device the vehicles would have failed emissions tests and failed to live up to the representations the companies made in the massive advertising campaign.

162. Volkswagen and Audi owed the Plaintiffs and Class Members a duty to disclose the defective nature of the vehicles based on the defeat devices because they:

    a. Possessed exclusive knowledge of the defeat devices;

    b. Knowingly concealed the presence of the defeat devices; and

    c. Made incomplete representations about the defeat devices and Class Vehicles.

163. Volkswagen's and Audi's unfair or deceptive trade practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles.

164. As a result of its violations of the Act detailed above, Volkswagen and Audi caused actual damage to Plaintiffs and Class Members and, if not stopped, will continue to cause harm. Plaintiffs and Class Members currently own or lease, or within the class period have owned or leased, Class Vehicles that only comply with emissions standards because of the defeat device. And even if complying with emissions standards, the vehicles fail to live up to the Volkswagen's and Audi's representations. Volkswagen's and Audi's conduct with respect to the defeat devices has caused the value of Class Vehicles to decline.

165. Plaintiffs risk irreparable injury as a result of Volkswagen's and Audi's acts and omissions in violation of the Act, and these violations present a continuing risk to Plaintiffs and Class Members as well as to the general public.

166. Pursuant to the Act, Plaintiffs and Class Members seek monetary relief against Volkswagen and Audi to recover for their sustained losses.

37

167.    Plaintiffs further allege that Volkswagen's and Audi's malicious and deliberate conduct warrants an assessment of punitive damages because the companies each carried out despicable conduct with willful and conscious disregard of the rights of the consumers and the public, subjecting Plaintiffs and Class Members to cruel and unjust hardship as a result. Volkswagen and Audi intentionally and willfully misrepresented the health and environmental impact of the Class Vehicles.  Volkswagen's and Audi's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

168.    Plaintiffs further seek an order enjoining Volkswagen's and Audi's unfair or deceptive acts or practices, restitution, punitive damages, costs of Court, attorney's fees, and any other just and proper relief available under the Act.

**Count 3 – Breach of the Implied Warranty of Merchantability**

169.    Plaintiffs re-allege and incorporate by reference all the above allegations as if fully set forth herein.  Plaintiffs bring this claim on behalf of the Class Members.

170.    Volkswagen and Audi are and were at all relevant times merchants with respect to Class Vehicles under VA. CODE ANN. § 8.2-314.

171.    A warranty that the Class Vehicles were in merchantable condition was implied by law in the instant transaction.

172.    These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Under normal driving conditions, the Class Vehicles emit 10 to 40 times the legal limit of pollutants.

173.    As a direct and proximate result of Volkswagen's and Audi's breach of the warranties of merchantability, Plaintiffs and the Class Members have been damaged in an amount to be proven at trial.

**Count 4 – Unjust Enrichment**

174.    Plaintiffs re-allege and incorporate by reference all the above allegations as if fully set forth herein.  Plaintiffs bring this claim on behalf of the Class Members.

175.    As a result of their wrongful and fraudulent acts and omissions, as set forth above, including the installation and concealment of the defeat device, Volkswagen and Audi charged a higher price for the Class Vehicles than the vehicles' true value, and Volkswagen and Audi obtained monies which rightfully belong to Plaintiffs and Class Members.

176.    Volkswagen and Audi knowingly enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and the Class Members, who paid a higher price for vehicles which actually had lower values.  It would be inequitable and unjust for Defendants to retain these wrongfully obtained profits.

177.    Plaintiffs, therefore, are entitled to restitution and seek an order establishing Volkswagen and Audi as constructive trustees of the profits unjustly obtained, plus interest.

## IX.    PRAYER FOR RELIEF

178.    Plaintiffs, individually and on behalf of members of the Class, respectfully request that the Court enter judgment in their favor and against Volkswagen and Audi, as follows:

a.   Certification of the proposed Class, including appointment of Plaintiffs' counsel as Class Counsel;

b.   An order temporarily and permanently enjoining Volkswagen from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

c.   Injunctive relief in the form of a recall or free replacement program;

d.  Costs, restitution, damages, and disgorgement in an amount to be determined at trial;

e.  Revocation of acceptance;

f.  For treble and/or punitive damages as permitted by applicable laws;

g.  An order requiring Volkswagen to pay both pre- and post-judgment interest on any amounts awarded;

h.  An award of costs and attorney's fees; and

i.  Such other or further relief as may be appropriate.

## X.  DEMAND FOR JURY TRIAL

179.  Plaintiffs demand a jury trial.

DATED this 24th day of September, 2015

Respectfully submitted,

David W. Stanley (Bar No. 12791)
**CUNEO GILBERT & LADUCA, LLP**
211 North Union St., Suite 100
Alexandria, VA 22314
Telephone: (202) 789-3960
davids@cuneolaw.com

By: /s/ Warren T. Burns
Warren T. Burns (*Pro Hac Vice* to be filed)
Daniel H. Charest
William Thompson
**BURNS CHAREST LLP**
500 North Akard, Suite 2810
Dallas, Texas 75201
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
wburns@burnscharest.com
dcharest@burnscharest.com
wthompson@burnscharest.com

Korey A. Nelson
Elizabeth A. Roche
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, Louisiana 70130
Telephone: (504) 799-2845
Facsimile: 504-881-1765
knelson@burnscharest.com
eroche@burnscharest.com

By: /s/ Don Barrett
Don Barrett (*Pro Hac Vice* to be filed)
David McMullan
Brian Herrington
**BARRETT LAW GROUP, P.A.**
404 Court Square
P.O. Box 927
Lexington, Mississippi 39095
Telephone: (662) 834-2488
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

By: /s/ Robert K. Shelquist
Robert K. Shelquist (*Pro Hac Vice* to be filed)
Rebecca A. Peterson
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 South Washington Ave., Suite 2200
Minneapolis, MN 55401
Telephone: 612-339-6900
Facsimile:   612-339-0981
rashelquist@locklaw.com
rapeterson@locklaw.com

By: /s/ Jonathan W. Cuneo
Jonathan W. Cuneo
**CUNEO GILBERT & LADUCA, LLP**
507 C Street NE
Washington, D.C. 20002
Telephone: (202) 789-3960
jonc@cuneolaw.com

Charles J. LaDuca
**CUNEO GILBERT & LADUCA, LLP**
8120 Woodmont Ave, Suite 810
Bethesda, MD 20814
Telephone: (202) 789-3960
charles@cuneolaw.com

By: /s/ Steven N. Williams
Steven N. Williams (*Pro Hac Vice* to be filed)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: 650-697-6000
Facsimile: 650-697-0577
swilliams@cpmlegal.com

By: /s/ William R. Scherer
William R. Scherer (*Pro Hac Vice* to be filed)
Albert L. Frevola Jr.
Ivan J. Kopas
Russell R. O'Brien
**CONRAD & SCHERER**
633 South Federal Highway
Eighth Floor
Fort Lauderdale, Florida 33301
P: (954) 462-5500
F: (954) 463-9244
wscherer@conradscherer.com
afrevola@conradscherer.com
ikopas@conradscherer.com